UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

THOMAS ROSS,

               **Plaintiff,**

    - against -

TRANSPORT WORKERS UNION OF
GREATER NEW YORK, AFL-CIO;
LOCAL 100 TRANSPORT WORKERS
UNION OF GREATER NEW YORK, AFL-
CIO; ROGER TOUSSAINT, PRESIDENT
TRANSPORT WORKERS UNION; NEFF
GONZALEZ, UNION SUPERVISOR;
PETER ROSCONI, UNION CHAIRMAN;
ROD BAILEY, UNION VICE PRESIDENT;
JOHN PROVETTO, OPERATIONS
MANAGER NEW YORK BUS; NAIM
AHMED, UNION CHAIRMAN; TERRY
O'CONNOR, NEW YORK CITY TRANSIT
and PATRICK TATE, MTA BUS, JOHN
DAY, UNION VICE PRESIDENT; JOHN
SAMUELSEN, UNION PRESIDENT;
ANGEL GIBOYEAUX, ASSISTANT VICE
PRESIDENT, TWU, LOCAL 100,

               **Defendants.**

------------------------------------------------------X

**OPINION AND ORDER**


**11 Civ. 9185 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Plaintiff Thomas Ross brings this action against Transport Workers

Union Local 100 ("Local 100") and the named individual Local 100 employees

John Samuelsen, Angel Giboyeaux, John Day and Peter Rosconi, (the "Individual Defendants") (collectively with Local 100, the "Local 100 Defendants") claiming that all of those defendants acting together and individually acted in violation of the Collective Bargaining Agreement of the Transport Workers Union ("the Agreement").[1]  The case was also brought against certain individual Metropolitan Transit Authority Bus employees, John Provetto, Terry O'Connor, and Patrick Tate, (collectively, the "MTA Bus Defendants") alleging that those individuals acting together, violated the Agreement.  On February 20, 2013, the parties stipulated to a partial dismissal of all claims against the MTA Bus Defendants. Ross seeks to recover compensation for both lost earnings and emotional pain and suffering.[2]  The Local 100 Defendants now move for summary judgment on Ross's claims pursuant to Federal Rule of Civil Procedure 56.  For the reasons stated below, the motion is granted.

## II.   BACKGROUND[3]

---

[1]    The case was also brought against the named individual Local 100 employees Roger Toussaint, Neff Gonzalez, and Naim Ahmed but on May 10, 2013, the parties stipulated to a partial dismissal of all claims against those individuals.

[2]    *See* Complaint ¶ 45.

[3]    The facts recited below are drawn from the pleadings, the parties' Local Civil Rule 56.1 Statements, the affidavits submitted in connection with this motion, and the exhibits attached thereto.  These facts are undisputed unless

Ross was employed by New York Bus from November 2002 until June 2005 when the Metropolitan Transit Authority ("MTA") took over New York Bus service and became the Metropolitan Transportation Authority Bus Company ("MTA Bus").[4] Because Ross lacked seniority, he was not included in the group of two hundred drivers offered employment by MTA Bus following the merger, but was told that he would receive a letter notifying him when he could return to work.[5] While an employee at New York Bus, Ross was a member of Local 100, but his membership ceased when his employment at New York Bus terminated in June 2005.[6]

Ross received a letter dated December 8, 2005 from MTA Bus notifying him of a vacancy in the bus operator position and offering him an opportunity to be considered for the position.[7] However, because the bus drivers were on strike at that time, Ross believed the letter would not be honored and did

---

otherwise noted.

[4]     *See* Plaintiff's Statement Pursuant to Local Rule 56.1 in Response to Defendants' Statement of Facts ("Pl. 56.1") ¶¶ 6-7.

[5]     *See id.* ¶ 9.

[6]     *See id.* ¶ 8.

[7]     *See id.* ¶ 13.

not respond.[8]  On June 17, 2006, Ross spoke by phone with Patrick Tate, then the

Eastchester Depot General Manager of MTA Bus, and was informed that if he

wanted his job back he should bring the letter to the Eastchester Depot the

following Monday morning.  During his meeting with Tate that Monday, Ross

completed applications and was told that he would receive a letter regarding the

status of his application in a week.[9]  After a few weeks when Ross did not hear

anything, he phoned Local 100 Supervisor Neff Gonzalez and was told by

Gonzalez that his application was rejected due to eight violations concerning

driving accidents.[10]

Ross returned to the Eastchester Depot to dispute these violations with

Tate, who listed the incidents from an index card in a folder but did not show Ross

the incident reports.  After their meeting, Tate offered Ross an application to

reapply but Ross declined as he had already submitted an application to MTA

Bus.[11]  Ross had submitted this application to MTA Bus in July 2006.[12]

---

[8]     See id. ¶ 14.

[9]     See 8/7/13 Affidavit of Plaintiff ("Pl. Aff.") ¶¶ 4-5.

[10]    See id. ¶ 8.

[11]    See id. ¶ 10.

[12]    See Pl. 56.1 ¶ 18.  In September 2008, Ross received a letter offering
him employment to start training for the position of a bus operator in response to

-4-

A couple of weeks later, Ross returned to the Eastchester Depot and met with Peter Rosconi and Peter Danacola, Local 100 chairmen. After Ross explained to the chairmen what had happened, Danacola told Ross that he would look into the matter. Ross called the next day to get an update and Danacola informed him that there was nothing that he could do.[13] Ross then wrote to Local 100 President Richard Toussaint[14] and called Vice-President Rod Bailey.[15] He did not receive a response from either.[16]

In September 2009, Ross accepted a position as a newly-hired employee with MTA Bus. After completing his one-year probation with MTA Bus, Ross again became a dues-paying member of Local 100 on September 29, 2010.[17] Ross then sought assistance from John Day, the newly-elected Local 100 Vice-President, concerning reinstating his seniority.[18]

---

his July 2006 application.

[13]    *See id.* ¶ 20.

[14]    *See id.* ¶ 24.

[15]    *See* Pl. Aff. ¶¶ 12-13.

[16]    *See id.* ¶ 16.

[17]    *See* Pl. 56.1 ¶¶ 26-27.

[18]    *See id.* ¶ 28.

Ross brought this action in New York State Court on December 2, 2011. In response, the Local 100 Defendants asserted that an action alleging breach of the collective bargaining agreement is one in which the federal court has original jurisdiction under section 301 of the Labor Management Relations Act ("LMRA").[19] The case was removed to this Court on December 15, 2011.

On July 19, 2013, the Local 100 Defendants filed the instant motion for summary judgment arguing that Ross lacks standing as he was not a member of the bargaining unit when the relevant events occurred, that the claim against the Individual Defendants is prohibited by law, and that the claim is time-barred.[20]

## III.   LEGAL STANDARD

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[21]   "A genuine

---

[19]   29 U.S.C. § 185(a).

[20]   *See* Memorandum of Law in Support of Defendants' TWU Local 100, John Samuelsen, Angel Giboyeaux, John Day and Peter Rosconi's Motion for Summary Judgment ("Def. Mem.") at 1.

[21]   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

-6-

dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit."[22]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[23] To defeat a motion for summary judgment, the non-moving party must show more than "'some metaphysical doubt as to the material facts,'"[24] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[25]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[26] "'Credibility determinations, the weighing of the evidence,

---

[22]    *Finn v. New York State Office of Mental Health-Rockland Psychiatric Ctr.*, 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[23]    *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[24]    *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[25]    *Robinson v. Allstate Ins. Co.*, 508 Fed. App'x 7, 9 (2d Cir. 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

[26]    *Cuff ex rel. B.C. v. Valley Cent. School Dist.*, 677 F.3d 109, 119 (2d Cir. 2012) (quotation marks and citations omitted).

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[27]

## IV.   APPLICABLE LAW

### A.   Duty of Fair Representation

"Under New York law, a union member has no cause of action against his union for breach of a collective bargaining agreement between his employer and his union."[28]  Rather, a plaintiff who has a claim arising out of the performance of duties under the collective bargaining agreement is left with the sole remedy of breach of the duty of fair representation.[29]  To establish a claim against a union for breach of its duty of fair representation, a plaintiff must allege facts that show:  (1) the union's actions were arbitrary, discriminatory, or in bad faith, and (2) some "'causal connection between the union's wrongful conduct and their injuries.'"[30]

---

[27]    *Redd v. New York Div. Of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[28]    *Ifill v. New York State Court Officers Ass'n*, 655 F. Supp. 2d 382, 393 (S.D.N.Y. 2009) (citing *Herington v. Civil Serv. Employees Ass'n, Inc.*, 516 N.Y.S.2d 377, 378 (1987)).

[29]    *See id.*

[30]    *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 708 (2d Cir. 2010) (quoting *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir.

"'A union has broad discretion in its decision whether and how to pursue an employee's grievance against an employer.'"[31] "'A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside of a wide range of reasonableness as to be irrational.'"[32] A finding of bad faith requires that the union acted with "fraud, deceitful action or dishonest conduct."[33] "'The duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance.'"[34]

## B.   Section 301 of the Labor Management Relations Act

A "hybrid" section 301 claim, "is one in which the employee has a cause of action against both the employer and the union.  The claim against the

––––––––––––––––––––

1998)).

[31]    *Castro v. 32BJ Union*, 800 F. Supp. 2d 586, 593 (S.D.N.Y. 2011).

[32]    *Vaughn*, 604 F.3d at 709 (quoting *Air Line Ass'n, Int'l. v. O'Neill*, 499 U.S. 65, 67 (1991)).

[33]    *Dennis v. Local 804*, No. 07 Civ. 9754, 2009 WL 1473484, at *4 (S.D.N.Y. May 27, 2009).

[34]    *Owens v. N.Y.C. Dept. of Sanitation*, No. 11 Civ. 8297, 2013 WL 150245, at *6 (S.D.N.Y. Jan. 15, 2013) (quoting *Cruz v. Local Union No. 3 of Int'l Broth. of Elec. Workers*, 34 F.3d 1148, 1153-54 (2d Cir. 1994)).

employer is that it violated the collective bargaining agreement. The claim against the union is that the union did not properly represent the employee in pressing the grievance against the employer."[35] "The law is clear that regardless of who is named as a defendant, a hybrid claim is presented if an employee has a cause of action against both the employer and the union, where the two claims are inextricably linked, and where the case to be proved is the same against both."[36] Thus, any breach of contract claim that arises out of a collective bargaining agreement is governed by section 301.[37]

Section 301(a) of the LMRA provides in relevant part that "suits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."[38] The LMRA does not however confer federal jurisdiction over

---

[35] *Chaney v. Greyhound Lines, Inc.*, No. 09 Civ. 7593, 2010 WL 2541369, at *3 (S.D.N.Y. June 23, 2010) (citing *McKee v. Transco Products, Inc.*, 874 F.2d 83, 86 (2d Cir. 1989)).

[36] *Id.*

[37] *See id.* at *2.

[38] 29 U.S.C. § 185.

-10-

labor disputes among states, their employees, and the unions who represent them.[39]
Thus, a plaintiff seeking to bring a hybrid claim must show that (1) he works for
an "employer" that is not a "political subdivision of the State" and that (2) he
participates in a "labor organization" that deals with that employer.[40]  The plaintiff
must then also prove both (1) that the employer breached a collective bargaining
agreement, and (2) that the union breached its duty of fair representation.[41]

   "Political subdivisions" within the meaning of the LMRA are
"entities that are either (1) created directly by the state, so as to constitute
departments or administrative arms of the government, or (2) administered by
individuals who are responsible to public officials or to the general electorate."[42]
The Second Circuit has held that the MTA is a "political subdivision" of the State
of New York within the meaning of the LMRA.[43]  Accordingly, MTA Bus

---

[39] *See Baumgart v. Stony Brook Children's Services, P.C.*, 249 Fed.
App'x 851, 852 (2d Cir. 2007) (citing 29 U.S.C. § 152(2)).

[40] *See id.*

[41] *See White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d
110, 113 (2d Cir. 1997).

[42] *Baumgart v. Stony Brook Children's Services, P.C.*, No. 03 Civ. 5526,
2005 WL 2179429, at *5 (E.D.N.Y. Sept. 5, 2005), *aff'd*, 249 Fed. App'x 851 (2d
Cir. 2007) (citing 29 U.S.C. § 152(2)).

[43] *See Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 917 (2d
Cir. 1987) (citing 29 U.S.C. § 1002(32)).

Company, a subsidiary of the MTA, is also a political subdivision.[44]

### C.     Statute of Limitations

In New York, "the statute of limitations on a claim for breach of the duty of fair representation is four months from the date the employee knew or should have known that the breach has occurred, or four months from the date the employee suffers actual harm, whichever is later."[45]  The statute of limitations for a hybrid section 301 claim is six months from the date the unlawful labor practice occurred.[46]  "'A breach of duty by the union is apparent to the member at the time s(he) learns of the union action or inaction about which s(he) complains.'"[47] "'Mere ignorance of the law is, of course, insufficient to delay the accrual of the statute of limitations.'"[48]

### D.     Individual Liability Under Section 301 of the LMRA

---

[44]     *See Dixion v. New York City Transit Auth.*, 24 Misc. 3d 1227(A) (Sup. Ct. N.Y. Co. 2009).

[45]     *Ifill*, 655 F. Supp. 2d at 394 (citing N.Y. C.P.L.R. § 217(2)(a)).

[46]     *See id.*

[47]     *Cohen v. Flushing Hosp. and Medical Ctr.*, 68 F.3d 64, 68 (2d Cir. 1995) (quoting *Demchik v. General Motors Corp.*, 821 F.2d 102, 105 (2d Cir. 1987)).

[48]     *Jackson v. New York City Transit Auth.*, No. 05 Civ. 1763, 2005 WL 2664527, at *3 (E.D.N.Y. Oct. 19, 2005) (quoting *Ormiston v. Nelson*, 117 F.3d 69, 72 (2d Cir. 1997)).

"It is well established that union officers and employees are not individually liable to third parties for acts performed as representatives of the union."[49]  The Supreme Court has held that section 301 of the LMRA prohibits suits against individual union members and reflects Congressional intent to shield these individuals from liability.[50]  This Court has subsequently held that union members and agents are immune from suit.[51]

## V.   DISCUSSION

### A.   Ross Fails to Allege Breach of the Duty of Fair Representation

The Local 100 Defendants move for summary judgment on Ross's breach of contract claim.  They argue that Ross's claim must be denied as a matter of law because a union member cannot sue his union for a breach of the collective

---

[49]     *Ifill*, 655 F. Supp. 2d at 394 (citing *Duane Reade, Inc. v. Local 338 Retail, Wholesale Dep't Store Union*, 777 N.Y.S.2d 231, 237 (Sup. Ct. Co. 2003).

[50]     *See Waterman v. Transport Workers' Union Local 100*, 8 F. Supp. 2d 363, 370 (S.D.N.Y. 1998) (citing *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 407-408 (1981)).

[51]     *See Madden v. International Ass'n of Heat and Frost Insulators and Asbestos Workers*, 889 F. Supp. 707, 713 (S.D.N.Y. 1995) (dismissing action against individual union officers); *Bonilla v. Bevona*, No. 91 Civ. 3008, 1993 WL 497961, at *2-3 (S.D.N.Y. Dec. 1, 1993) (president of union cannot be held responsible in his individual capacity for acts of union representative); *Duncan v. AT&T Commc'ns, Inc.*, 668 F. Supp. 232 (S.D.N.Y. 1987) (dismissing action against union presidents in their individual capacities).

-13-

bargaining agreement between a union and an employer.[52]  The Local 100

Defendants further argue that Ross's sole remedy is for breach of the duty of fair

representation.[53]  Ross does not deny that his claim is indeed against the Local 100

Defendants for breach of contract.[54]  He further contends that his contract claims

may be interpreted as a common law contract violation and a violation of the

collective bargaining agreement.[55]

      In his complaint, Ross fails to allege that the Local 100 Defendants

breached their duty of fair representation.  Nor does Ross allege any facts that

suggest that the Local 100 Defendants acted in an arbitrary, discriminatory, or bad

faith manner.  Furthermore, in his opposition to the Local 100 Defendants' motion,

Ross states only that "there can be no doubt that a common law contractual action

can be maintained" and a "fair representation claim which can be derived and

understood from the contractual claims."[56]  This type of circulatory and conclusory

---

[52]    *See* Def. Mem. at 7.

[53]    *See id.*

[54]    *See* Plaintiff's Memorandum of Law in Support of Denial of
Defendants' TWU Local 100, John Samuelsen, Angel Giboyeaux, John Day and
Pete Rosconi's Motion for Summary Judgment ("Pl. Mem."), at 10.

[55]    *See id.*

[56]    *Id.*

argument lacks sufficient facts as to how the Local 100 Defendants failed to represent Ross. In essence, Ross's claim is that "the Union did not fulfill its contractual obligation to correct the plaintiff's loss of income situation."[57] Ross claims that the Local 100 Defendants should have conducted an investigation and filed a grievance as Ross had requested.[58] At the time that Ross asked Danacola to look into the matter, Danacola complied and told Ross that there was nothing he could do for him.[59] This alone does not suggest that the Local 100 Defendants' conduct was arbitrary, discriminatory, or in bad faith. Mere negligence in the processing of a grievance does not amount to arbitrariness or bad faith.[60] In short, Ross has failed to submit evidence from which a reasonable jury could find that the Local 100 Defendants breached their duty of fair representation. Accordingly, as a union member has no cause of action against his union for breach of a collective bargaining agreement between his employer and his union, the breach of contract

---

[57]   Complaint ¶ 45.

[58]   *See* Pl. Aff. ¶ 20.

[59]   *See* Complaint ¶ 25.

[60]   *See Gonzalez v. Airborne Express, Inc.*, No. 02 Civ. 3369, 2006 WL 229913 (E.D.N.Y. Jan. 31, 2006) (holding that even if the union was negligent in investigating an incident, union cannot be liable for breach of its duty of fair representation and tactical decisions regarding how the union investigated plaintiff's grievance are not arbitrary or in bad faith).

claim fails as a matter of law.

**B.    Section 301 of the LMRA**

The Local 100 Defendants argue that if the Court allows the claim to

survive it must be treated as one based on section 301 of the LMRA, and that that

claim must fail as well.[61]  Although Ross did not bring such a claim, he argues in

his opposing memorandum of law that the Local 100 Defendants' contention "may

not be so"[62] and that he has both a "common law contractual claim" and a "fair

representation claim derived and understood from the contractual claims."[63]  Ross

also argues that although the employer was dismissed from the case, its conduct is

still at issue.[64]

The Second Circuit has made clear that a suit in which an employee

alleges an employer has breached the collective bargaining agreement and that the

union has breached its duty of fair representation by failing to enforce the

collective bargaining agreement is not governed by breach of contract principles,

---

[61]    *See* Def. Mem. at 7.

[62]    *See* Pl. Mem. at 10.

[63]    *See id.*

[64]    *See id.*

-16-

but rather by section 301 of the LMRA.[65]  However, this claim also fails as a

matter of law as Ross neither alleges nor puts forth specific facts to infer that this is

a claim for breach of the duty of fair representation or a hybrid claim.

However, even if Ross had stated a hybrid claim under section 301, he

lacks standing to bring such a claim.  The Second Circuit has established that an

essential component of a hybrid claim is that the plaintiff must show that he works

for an "employer" that is not a "political subdivision of the State."[66]  Because MTA

Bus, a subsidiary of MTA, is a political subdivision of the State of New York, Ross

may not sue under section 301.[67]

### C.    Statute of Limitations

The Local 100 Defendants argue that Ross was aware that Local 100

was not handling his alleged grievance in a satisfactory manner as early as October

27, 2006, when he wrote a letter to Local 100 President in response to being told

---

[65]    *See Chaney*, 2010 WL 2541369, at \*3.

[66]    *See Baumgart*, 249 Fed. App'x at 2.

[67]    The Local 100 Defendants also argue that Ross lacks standing because
he was not a member of Local 100 at the relevant time.  Ross states that when he
spoke to the union officials seeking assistance he was a member of Local 100.
Because Ross lacks standing as MTA Bus is a political subdivision of the State, it
is unnecessary to determine whether Ross was a member of Local 100 at the time
of the relevant events.

-17-

by Danacola that there was nothing Local 100 could do about the situation.[68]  Ross
does not dispute when the breach occurred but argues that he did not know of the
breach until he was informed by his counsel.[69]

Ross misinterprets the discovery rule.  The statute of limitations in
fact began to accrue when Ross learned of Local 100's inaction on his grievance –
i.e. the breach – not when he learned that he had a possible cause of action.  Ross's
claim arising from the duty of fair representation accrued in October 2006 when he
knew or should have known that his grievance was not being properly handled.
Thus, Ross's claim for both breach of the duty of fair representation and the hybrid
section 301 claim are time-barred because they were brought more than five years
after the alleged breach.

### D.    Defendants John Samuelsen, Angel Giboyeaux, John Day, and Peter Rosconi

In his Complaint, Ross names John Samuelsen, Angel Giboyeaux,
John Day, and Peter Rosconi as individual defendants and includes their job titles.
The Individual Defendants argue that at all times the union officials were acting as
representatives of Local 100 and that Ross's claims against them must be

---

[68]    *See* Def. Mem. at 11.

[69]    *See* Pl. Mem. at 12.

-18-

dismissed.[70] Because there is no individual liability under section 301, Ross's claim against Samuelsen, Giboyeaux, Day, and Rosconi in their individual capacities is dismissed.

## VI.   CONCLUSION

For all of the reasons set forth above, the Local 100 Defendants' motion for summary judgment is granted.  The Clerk of the Court is directed to close the motion (Doc. 56) and the case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
       December 11, 2013

---

[70]   *See* Def. Mem. at 12.

-19-

**- Appearances -**

**For Plaintiff:**
Andrew J. Schatkin, Esq.
Law Offices of Andrew J. Schatkin
350 Jericho Turnpike
Jericho, NY 11753
(516) 932-8120
Email: schatkin@yahoo.com

**For Defendants:**
Alicia Margaret Shotwell, Esq.
Colleran, O'Hara & Mills LLP
1225 Franklin Avenue, Suite 450
Garden City, NY 11530
(516) 248-5757
Email: ams@cohnmlaw.com